UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAVINCE PATE, | : | CIVIL NO: 1:13-CV-02120 |
| | : | |
| Petitioner | : | (Judge Rambo) |
| | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| TABB BICKELL, | : | |
| | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Introduction.**

In 2009, a jury in the Court of Common Pleas of Dauphin County convicted LaVince Pate of possession with intent to deliver a controlled substance, carrying a firearm without a license, and possession of drug paraphernalia. He was sentenced to an aggregate term of five to ten years in prison. In this habeas corpus case, Pate claims that there was insufficient evidence to convict him and that his trial counsel provided ineffective assistance of counsel. For the reasons discussed below, we recommend that the petition for a writ of habeas corpus be denied.

## II. Background and Procedural History.

Pate's conviction stems from evidence—drugs, a scale, and a gun—found in a car in which Pate was a passenger.   The Superior Court of Pennsylvania aptly summarized the evidence at Pate's trial:

> [Pate]'s convictions stem from events that took place on April 4, 2008.   At [Pate]'s trial beginning on November 17, 2009, Officer Jeffrey Weaver of the Middletown Police Department testified that on that date, he conducted a traffic stop of a white Lexus traveling at a high rate of speed and [with] improper window tint.   [Pate] was the front seat passenger of the vehicle in question, which was driven by his cousin, Brandon Parker.   Officer Weaver asked both Parker and [Pate] to furnish identification.   Parker obliged, while [Pate] stated that he did not have any identification, but wrote down his name, address, and date of birth.
>
> When Sergeant James Bennett, Officer Weaver's partner, arrived on the scene, Officer Weaver asked [Pate] to exit the vehicle.   Officer Weaver described [Pate]'s subsequent actions:
>
>> [Pate] turned, put the passenger window up, he turned and said something to the driver, which I wasn't able to understand what he said at the time, but he was putting the window up, and the vehicle started.   I drew my . . . baton.   I was going to break out the window at which time I saw [Pate] lunge for the back seat of the vehicle, like he was going to retrieve something.   He came back to the front seat of the vehicle and dove down between his legs or like he was going underneath the seat or something at which time I thought he was drawing a weapon.

Officer Weaver drew his service weapon and moved to the front of the vehicle. Sergeant Bennett repositioned his vehicle in front of the Lexus to prevent it from moving. Officer Weaver then removed [Pate] from the vehicle and placed him in handcuffs. After [Pate] was secured, Officer Weaver looked back into the vehicle where Parker remained in the driver's seat. In doing so, he had a clear view of the passenger compartment, and observed the barrel end of a black, semiautomatic pistol protruding from under the passenger's seat. Parker was then removed from the vehicle and secured in handcuffs, at which time Officer Weaver retrieved the handgun. The firearm was a loaded Ruger P-95 BC nine-millimeter. A search of [Pate], incident to arrest, revealed two cell phones and $948.00 in cash.

Upon obtaining a search warrant, Detective Dennis Morris, Jr., searched the Lexus with other officers. The search produced $185.00 in the center console, a baggie of suspected crack cocaine under the passenger's seat, and a digital scale under the passenger's seat. The baggie, scale, and firearm were then sent to the Pennsylvania State Police crime lab for testing. The lab confirmed that the substance in the baggie contained cocaine base and weighed 2.7 grams. There were no fingerprints on either the baggie or the firearm. Tests of the scale yielded marijuana residue and another unidentified residue.

At trial, Parker testified that when Officer Weaver asked [Pate] to step out of the vehicle, [Pate] put his window up, reached to the driver's side, turned the key in the ignition, and told Parker they "should make a run for it." Parker told the court that he did not attempt to leave the scene because Officer Weaver already had his license and registration, and he feared he would get into trouble. Parker said he was unsure whether the contraband was already in the vehicle when [Pate] entered or if [Pate] brought it with him. He also recalled [Pate] making a move toward the back seat during the traffic stop, but said his attention was primarily on the officers.

3

> [Pate] testified that the following occurred after he was
> asked to exit the vehicle:
>> I rolled the window back up and told [Parker] to go.
>> He even locked the door.   I locked the back.   Then
>> I cut the car on.   And he kept unlocking the door.
>> I kept locking it back and then I seen a cop car pull
>> in front of the car and then just gave up.
>
> [Pate] stated that he did not possess any cocaine, a scale or a
> firearm when he entered the vehicle.   He further explained that
> he was carrying $948.00 in cash because he did not have a bank
> account, and had planned to use the money as a deposit on an
> apartment.
>> Detective William Bryan Jackson, an expert in street level
>> drug trafficking, testified that the evidence seized—crack
>> cocaine in two large rocks and "a whole bunch of small, tiny
>> rocks or crumbs;" a gram scale; $948.00 comprised of "a lot of
>> $20.00 bill denominations;" and a firearm—was consistent with
>> drug dealing.

*Commonwealth v. Pate,* No. 285 MDA 2010, slip op. at 1-4 (Pa. Super. Ct. Oct. 21,

2010)(citations omitted).

Following an unsuccessful direct appeal and unsuccessful Post Conviction

Relief Act proceedings in state court, Pate filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court challenging his conviction and raising

four claims: (1) the evidence was insufficient for the jury to find that he was in

constructive possession of the contraband found in the vehicle; (2) his trial counsel

was ineffective by failing to call Tyesha Jones, who would have testified that Pate

was with her earlier on the night in question and that he did not have the contraband

4

on him at that time; (3) his trial counsel was ineffective by failing to file a motion to suppress the evidence found in the vehicle; and (4) his trial counsel was ineffective by failing to impeach the testimony of Brandon Parker.

In accordance with *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), we warned Pate of the effects of filing a § 2254 petition in light of the Antiterrorism and Effective Death Penalty Act, and we ordered Pate to complete an election form electing either to have the Court rule on his petition or to withdraw his petition. Pate did not complete the election form.   Instead, he filed a motion asking for an extension of time to file an all-inclusive amended petition.   We granted that motion as well as a later motion for an extension of time to file an amended petition.   Pate was given until January 13, 2014 to file an amended petition.

But Pate did not file an amended petition.   Rather, he filed a document titled "Stay and Abeyance Protective Petition," in which he requested that the Court stay his petition while he returns to state court to exhaust all his claims.   He attached to this request an Order, dated October 25, 2013, from Judge Cherry of the Court of Common Pleas of Dauphin County and one page of what appeared to be the opinion accompanying that Order. *Doc. 11* at 2-3.   That one page of the opinion cited *Alleyne v. United States,* 133 S.Ct. 2151 (2013)(holding that any fact that increases

the statutory minimum sentence for a crime must be decided by a jury beyond a

reasonable doubt), stated that *Alleyne* overruled *McMillan v. Pennsylvania,* 477 U.S.

79 (1986)(rejecting a constitutional challenge to Pennsylvania's Mandatory

Minimum Sentencing Act, which provided that anyone convicted of certain felonies

is subject to a mandatory minimum sentence of five years if the sentencing judge

finds, by a preponderance of the evidence, that the person visibly possessed a

firearm during the crime), and noted that the Pennsylvania Superior Court recently

suggested that *Alleyne* applies retroactively. *Id.* at 2.   The opinion also provided that

in light of recent case law, the court's Memorandum and Order of August 29, 2013,

which considered *McMillan* "controlling as it related to treating the possession of a

firearm as a sentencing factor requiring a mandatory five-year minimum sentence as

opposed to an element to be proved to a jury beyond a reasonable doubt," will be

vacated. *Id.*   Judge Cherry's Order vacated the Memorandum Opinion and Order

filed August 29, 2013 and directed the Commonwealth to file a response to Pate's

petition. *Id.* at 3.[1]

---

[1] From the docket sheet in Pate's criminal case, *see Commonwealth v. Pate,*
CP-22-CR-0002793-2008 (C.C.P. Dauphin Cty.), we know that the petition at issue
was a second Post Conviction Relief Act (PCRA) petition.

Pate asserted that Judge Cherry's order left him with unexhausted claims, and he requested a stay of this case while he exhausted those claims in state court. We denied that motion to stay because Pate did not satisfy the requirements for a stay. More specifically, we concluded that although Pate suggested in his motion that he had an unexhausted claim relating to his minimum sentence, he did not present any such claim in his petition for a writ of habeas corpus in this Court. And as to all the claims that Pate raised in his habeas corpus petition, he indicated in the petition that he had exhausted those claims in state court either through direct appeal or through a PCRA petition. Concluding that it did not appear that the petition in this case contained any unexhausted claims, we found no basis to stay this case. We further noted, however, that it appeared that Pate wanted to amend his petition to include the claim that is the subject of ongoing state proceedings. But because he had not yet amended his petition to add that claim, we could not assess whether that claim was potentially meritorious, a required assessment in considering whether to grant a stay. We also noted that Pate had not explained why he did not exhaust that claim sooner. Such an explanation was necessary for the Court to assess the other pertinent considerations in the stay calculus. In sum, we concluded that Pate had not shown that this case should be stayed, and so we denied his motion to stay without prejudice

to Pate renewing that motion after he filed an amended petition, if he chose to file an amended petition.   And we ordered that Pate may file an amended petition, on the standard form, on or before April 17, 2014, containing all his claims.   We further directed that any amended petition shall include the docket number of this case and that Pate shall clearly label the petition as an amended petition.

On April 17, 2014, Pate filed a document titled "Motion of Amendment to Petition."   Despite its title, that document was not a motion; it was an amendment to Pate's habeas petition.   In the amendment, relying on *Alleyne,* Pate claimed that his sentence is illegal because the sentencing judge determined that a sentencing factor triggering a mandatory minimum sentence was present, rather than submitting the issue to the jury for decision.   Contrary to this Court's order granting him leave to amend, Pate did not file an amended petition on the standard habeas form. Moreover, also contrary to the Court's prior order, Pate did not file an amended petition containing all of his claims.   Instead, Pate just filed an additional claim, which he appeared to want to add to his petition.   Because Pate failed to comply with the order granting him leave to amend, we ordered that his "Motion of Amendment to Petition" be stricken from the record.

Pate also filed another motion to stay this case.   He again sought an order staying this case while he exhausts in state court his claim that his sentence was illegal because the sentencing judge determined that a sentencing factor triggering a mandatory minimum sentence was present, rather than submitting the issue to the jury for decision.   By that time, Pate's filings showed that the PCRA court determined that *Alleyne* did not apply to his case because *Alleyne* does not apply retroactively to cases on collateral review.   But, according to Pate, *Alleyne* should apply retroactively to cases on collateral review, and asserting that he was appealing that issue to the Pennsylvania Superior Court, he sought a stay pending exhaustion of that claim in the state courts.   Concluding that Pate did not have a potentially meritorious unexhausted claim because the United States Court of Appeals for the Third Circuit recently held that *Alleyne* does not apply retroactively to cases on collateral review, *see United States v. Winkelman,* 746 F.3d 134, 136 (3d Cir. 2014), we denied his motion to stay.

We then again provided Pate with the notice required by *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), and ordered that he elect how he wished to proceed. Pate elected to proceed with his habeas petition as filed.   He also filed a

memorandum of law in support of his petition.[2]   On July 24, 2014, the respondent filed an answer to the petition.

One day before the respondent filed his answer to the petition, Pate filed a motion to supplement his petition to add a claim to his petition.   Undeterred, Pate again sought to raise a claim based on *Alleyne.*   He sought to supplement his petition to add a claim that his sentence is illegal because he was sentenced in accordance with 42 Pa.C.S.A. §9712.1, which provides for a mandatory minimum sentence for certain drug offenses committed with a firearm and which provides that whether the mandatory minimum is triggered is to be determined by the Court at sentencing.   Pate contended that the statute is facially invalid in light of *Alleyne.* As we previously noted in connection with Pate's second motion to stay, the United States Court of Appeals for the Third Circuit has held that *Alleyne* does not apply retroactively to cases, such as Pate's, on collateral review. *Winkelman,* 746 F.3d at 136; *see also United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014).   As such, the illegal-sentence claim based on *Alleyne* that Pate sought to add to his petition was without merit, and so we denied his motion to supplement.

_____

[2] Although Pate had not raised a sentencing claim in his petition, he devoted a section of his memorandum to his argument that his sentence is illegal under *Alleyne*.

10

The respondent addressed three of the four claims in Pate's habeas petition on the merits.   But as to one claim—the claim that there was insufficient evidence that Pate had constructive possession of the contraband seized from the vehicle—the respondent contended that Pate procedurally defaulted that claim by not presenting it in his PCRA petition.   But a petitioner does not necessarily need to present a claim in a PCRA petition to exhaust the claim in state court. *Swanger v. Zimmerman,* 750 F.2d 291, 295 (3d Cir. 1984)("It is well settled that a claim raised in state court at trial and on direct appeal satisfies the exhaustion requirement and that a habeas corpus petitioner need not also raise the claim in a collateral attack before proceeding in federal court.").   And Pate asserted that he exhausted his claim that there was insufficient evidence on direct appeal.

Because the respondent had not presented the Court with the relevant documents regarding Pate's direct appeal such that we could determine whether Pate exhausted his sufficiency-of-the-evidence claim, we ordered the respondent to file additional documents.   The respondent complied, and the additional documents show that Pate presented his sufficiency-of-the-evidence claim on direct appeal. Thus, Pate exhausted that claim as well as the ineffective-assistance-of-counsel

claims in his petition.   Against this background, we now address Pate's petition for a writ of habeas corpus.

## III. Discussion.

### A. The Standard for Addressing Habeas Claims on the Merits.

In addition to overcoming procedural hurdles, a state prisoner must meet exacting substantive standards in order to obtain habeas corpus relief.   As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 limits the power of a federal court to grant a state prisoner's petition for a writ of habeas corpus. *Cullen v. Pinholster,* 131 S.Ct. 1388, 1398 (2011).   A federal court may not grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;   or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The standard under Section 2254(d) is highly deferential and difficult to meet. *Cullen,* 131 S.Ct. at 1398.   It "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute

12

for ordinary error correction through appeal." *Harrington v. Richter,* 562 U.S. 86,

102-103 (2011)(quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)(Stevens,

J., concurring in judgment)).    State courts are presumed to know and follow the law,

*Woods v. Donald,* 135 S.Ct. 1372, 1376 (2015), and Section 2254(d) "'demands that

state-court decisions be given the benefit of the doubt.'" *Cullen,* 131 S.Ct. at 1398

(quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002)).

Under Section 2254(d)(1), only the holdings, not the dicta, of the Supreme

Court constitute "clearly established Federal law." *Howes v. Fields,* 132 S.Ct. 1181,

1187 (2012).   "[R]eview under § 2254(d)(1) is limited to the record that was before

the state court that adjudicated the claim on the merits." *Cullen,* 131 S.Ct. at 1398.

Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*,

529 U.S. 362, 412 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas

court may grant the writ if the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case. *Id.* at 413.   But federal habeas relief may

be granted only if the state court's application of clearly established federal law was

objectively unreasonable. *Keller v. Larkins*, 251 F.3d 408, 418 (3d Cir. 2001). "[A]n

incorrect application of federal law alone does not warrant relief." *Id.*   "[I]f the

state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross,* 132

S.Ct. 490, 495 (2011).   "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Richter,* 562 U.S. at 101 (quoting

*Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).   "When assessing whether a

state court's application of federal law is unreasonable, 'the range of reasonable

judgment can depend in part on the nature of the relevant rule' that the state court

must apply." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough,* 541

U.S. at 664).   "Because AEDPA authorizes federal courts to grant relief only when

state courts act *unreasonably,* it follows that '[t]he more general the rule' at

issue—and thus the greater the potential for reasoned disagreement among

fair-minded judges—'the more leeway [state] courts have in reaching outcomes in

case-by-case determinations.'" *Id.* (emphasis in original).

Under the "unreasonable determination of the facts" provision of § 2254(d)(2), the test "is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record." *Roundtree v. Balicki,* 640 F.3d 530, 537-38 (3d Cir. 2011).   "[T]he evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication." *Id.* at 538.

### B.   Sufficiency of the Evidence.

Pate claims that the evidence was insufficient for the jury to find that he was in constructive possession of the contraband found in the vehicle. Sufficiency-of-the-evidence claims are governed by the seminal case of *Jackson v. Virginia,* in which the Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979)(emphasis in original).   This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

to ultimate facts," and under this standard the court must presume that the trier of fact resolved any conflicts in favor of the prosecution. *Id.* at 319 & 326.

When raised in the context of a habeas case after a decision on the merits by a state court, a sufficiency-of-the-evidence claim is subject to two layers of judicial deference. *Coleman v. Johnson,* 132 S.Ct. 2060, 2062 (2012).   First, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 132 S.Ct. 2, 4 (2011).   Second, a habeas court may overturn a state court decision rejecting a sufficiency-of-the-evidence claim "only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett,* 559 U.S. 766, 773 (2010)).   "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

The Pennsylvania Superior Court addressed and rejected Pate's sufficiency-of-the-evidence claim.   The Superior Court noted that under Pennsylvania law, constructive possession may be inferred from the totality of the circumstances and is found where an individual has both the power to control the item in question and the intent to exercise such control. *Commonwealth v. Pate,* No.

285 MDA 2010, slip op. at 6 (Pa. Super. Ct. Oct. 21, 2010).   The Superior Court

reasoned that Pate's "furtive movement underneath his seat, where the contraband

was eventually discovered" was sufficient for the jury to conclude that he

constructively possessed the items. *Id.*   The Superior Court also found that "the

totality of the circumstances—*i.e.* Parker's testimony that [Pate] asked him to flee

the scene and the $948.00 in cash found on [Pate's] person—provide further

evidence that [Pate] constructively possessed the contraband." *Id.*   It also rejected

Pate's argument that the lack of fingerprint evidence and the position of the gun

when found, which Pate characterized as inconsistent with how a person would hide

a gun from the police, undermined the sufficiency of the evidence. *Id.* at 7.   The

Superior Court concluded that "the evidence was sufficient to prove that [Pate] had

the power to control the drugs, scale, and firearm found in the vehicle, as well as the

intent to exercise that control." *Id.* at 8.

Given the "twice-deferential standard" that applies to habeas claims that the

evidence was insufficient to convict, *Parker v. Matthews*, 132 S. Ct. 2148, 2152

(2012), the Superior Court's rejection of Pate's claim is entitled to deference under

AEDPA.   The Superior Court's opinion was not contrary to, or an unreasonable

application of clearly established Supreme Court precedent, and it was not based on

17

an unreasonable determination of the facts in light of the evidence.    Thus,

"[a]ffording due respect to the role of the jury and the state courts," *Coleman,* 132

S.Ct. at 2065, Pate's sufficiency-of-the-evidence claim fails.

### C.   Ineffective Assistance of Counsel.

Pate presents three claims that his trial counsel was ineffective: (1) by failing

to call Tyesha Jones, who would have testified that Pate was with her earlier on the

night in question and that he did not have the contraband on him at that time; (2) by

failing to file a motion to suppress the evidence found in the vehicle; and (3) by

failing to impeach the testimony of Brandon Parker, the driver of the vehicle.

The Sixth Amendment provides that " [i]n all criminal prosecutions, the

accused shall enjoy the right . . . to have the assistance of counsel for his defence."

U.S. Const. amend VI.   The purpose of the right to the assistance of counsel is to

ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right

to the effective assistance of counsel.'" *Strickland v. Washington,* 466 U.S. 668, 686

(1984)(quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).   "The

benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the

trial cannot be relied on as having produced a just result." *Id.*   "The Sixth

18

Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).   The clearly established federal law as to an ineffective-assistance claim is the standard set forth in *Strickland,* 466 U.S. at 687, which requires a two part analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. *Id.* at 687.   To do so, he must establish that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011)(quoting *Strickland,* 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Cullen v. Pinholster,* 131 S.Ct. 1388, 1403 (2011)(quoting *Strickland,* 466 U.S. at 688).   "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Richter,* 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice.
*Strickland,* 466 U.S. at 687.   To do so, the petitioner must show a reasonable
probability that, if not for counsel's errors, the result of the proceeding would have
been different. *Id.* at 694.   "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." *Id.*   "That requires a 'substantial,' not just
'conceivable,' likelihood of a different result." *Pinholster,* 131 S.Ct. at 1403
(quoting *Harrington,* 131 S.Ct. at 791).

To prevail on an ineffective assistance claim, a petitioner must satisfy both
prongs of *Strickland*.   A court can choose which prong of the standard to apply first,
and it may reject an ineffectiveness claim on the ground that the petitioner was not
prejudiced without addressing whether counsel's performance was deficient.
*Strickland,* 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task," *Padilla v.
Kentucky,* 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's
application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."
*Richter*, 562 U.S. at 105.   When the state court has decided the claim on the merits,
"[t]he question 'is not whether a federal court believes the state court's
determination' under the *Strickland* standard 'was incorrect but whether that

determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).   "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

The Superior Court addressed Pate's ineffective-assistance-of-counsel claims on the merits.   It set forth the standard for deciding such claims under the PCRA. Although the Pennsylvania courts use slightly different language to articulate the ineffectiveness standard, the standard used by the Pennsylvania courts is consistent with the *Strickland* standard. *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) (concluding that the Pennsylvania courts applying the standard from Pennsylvania cases did not apply a rule of law that contradicts *Strickland* and finding that the state court's decision was not contrary to established Supreme Court precedent).   Thus, the state court's decision on Pate's ineffective-assistance-of-counsel claims was not contrary to clearly established federal law.   So we turn to whether the state court's decision as to each asserted instance of ineffectiveness resulted in a decision that involved an unreasonable application of clearly established federal law, *i.e.*, *Strickland*.

**1.   Pate's Trial Counsel Was Not Ineffective by Failing to call Tyesha Jones.**

Pate claims that his trial counsel was ineffective because he failed to call Tyesha Jones, who, according to Pate, would have testified that Pate was with her earlier on the night in question and that he did not have the contraband on him at that time.

Although in his habeas petition Pate asserts that his trial counsel was ineffective for failing to call as a witness a woman from whose home he was picked up on the night in question, he did not identify that witness by name in his PCRA petition.   Noting that Pate's PCRA counsel, who requested and was granted leave to withdraw, asserted in his motion to withdraw that Pate failed to identify the witness even after counsel asked for the identity of the witness, the PCRA court found Pate's claim that counsel was ineffective for failing to call the witness was without merit. *Commonwealth v. Pate,* 2793 CR 2008, slip op. at 5 (C.C.P. Dauphin Cty. Aug 1, 2012)(Memorandum Opinion and Order giving Pate notice of Court's intent to dismiss his PCRA petition and giving him 20 days to respond).   The Superior Court noted that Pate asserted that he had, in fact, identified Tyesha Jones to his PCRA counsel. *Commonwealth v. Pate,* No. 1623 MDA 2012, slip op. at 7 (Pa.Super. Ct. June 11, 2013).   But it reasoned that Pate had failed to assert that he told his trial

counsel of Jones's identity prior to trial, and, therefore, he failed to meet his burden of showing that trial counsel was ineffective by failing to call Jones. *Id.*   The Superior Court also noted that although Pate submitted an affidavit dated January 24, 2013 signed by Jones, it could not consider that affidavit because it was not part of the certified record. *Id.* At 7-8.   The Superior also reasoned, however, that even if Pate could demonstrate that his trial counsel decided not to call Jones, he cannot establish that he was prejudiced by that decision given the evidence that Pate was in constructive possession of the contraband. *Id.* at 8.

Given the evidence presented at trial of Pate's construction possession of the contraband and the limited probative value of testimony from Jones that Pate did not have a gun or any drugs on him earlier at her house, under the "doubly deferential" standard that applies to a *Strickland* claim evaluated under 28 U.S.C. § 2254(d)(1), *Knowles*, 556 U.S. at 123, the Superior Court's determination that Pate was not prejudiced by counsel's failure to call Jones as a witness was reasonable. Accordingly, Pate is not entitled to habeas relief on this claim of ineffective assistance of counsel.

**2. Pate's Trial Counsel Was Not Ineffective by Failing to file a Motion to Suppress.**

Pate claims that his trial counsel was ineffective because he failed to file a motion to suppress the evidence found in the vehicle.

Although *Stone v. Powell,* 428 U.S. 465 (1976), generally bars habeas review of a petitioner's Fourth Amendment claims, the *Stone* bar does not extend to Sixth Amendment claims of ineffective assistance of counsel with regard to the presentation of a Fourth Amendment issue.   But "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 382 (1986).

The Superior Court agreed with the PCRA court that the traffic stop and the subsequent search of the car were valid, and therefore, it found Pate's claim that his trial counsel was ineffective for failing to file a suppression motion without merit. *Commonwealth v. Pate,* No. 1623 MDA 2012, slip op. at 9 (Pa.Super. Ct. June 11, 2013).   The PCRA Court, in turn, relied on Officer Weaver's testimony at trial and statements that were in the affidavit of probable cause attached to the criminal

24

complaint against Pate. *Commonwealth v. Pate,* 2793 CR 2008, slip op. at 6 (C.C.P. Dauphin Cty. Aug 1, 2012).   As to the traffic stop, Officer Weaver testified that he "observed two traffic violations: driving through a yellow light at a high rate of speed and the car had dark tinted windows." *Id.*   The PCRA Court noted that after Officer Weaver checked Pate's information to determine whether he had any outstanding warrants, he learned that the Pate was wanted in Susquehanna Township for delivery a controlled substance, and he then returned to the car and asked Pate to step out. *Id.*   After Officer Weaver asked him to step out of the car, Pate rolled up the window and started the car, and "Officer Weaver then observed [Pate] make erratic movements towards the backseat of the car and then dive between his legs to access something underneath the front passenger seat." *Id.*   And after Officer Weaver removed Pate from the vehicle, he "was able to see the barrel end of a pistol sticking out from under the passenger seat." *Id.*   After Pate and Parker were arrested, a search warrant was obtained before the rest of the vehicle was searched. *Id.*   The Superior Court also noted that Pate had not demonstrated that he had a privacy interest sufficient to seek suppression of the seized items because "a passenger usually does not have a privacy interest in a vehicle owned by another

party." *Commonwealth v. Pate,* No. 1623 MDA 2012, slip op. at 9 (Pa.Super. Ct. June 11, 2013).[3]

Based on the evidence, even if Pate's counsel had filed a motion to suppress there is no reasonable basis to think that the court would have granted that motion because: (1) Officer Weaver had reasonable suspicion of traffic violations so as to make a lawful traffic stop;[4] (2) after learning that Pate was wanted and given Pate's erratic movements it was reasonable for Officer Weaver to believe that Pate was reaching for a gun and thus to remove him from the vehicle and arrest him;[5] (3) the

---

[3] Although Pate may not have had a privacy interest in the search of the vehicle and the seizure of the items found in it, a passenger in a vehicle stopped by the police is seized "and so may challenge the constitutionality of the stop." *Brendlin v. California,* 551 U.S. 249, 251 (2007).

[4] "A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004).   To comply with the Fourth Amendment, a police officer must have at least reasonable suspicion of a traffic violation to make a traffic stop. *United States v. Delfin-Colina,* 464 F.3d 392, 397 (3d Cir. 2006).

[5] "[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). And here once Officer Weaver learned that Pate was wanted for delivery of a controlled substance, he had probable cause to arrest him.

gun was found in plain view after Pate was removed from the vehicle;[6] and (4) the

search of the rest of the vehicle was done pursuant to a warrant.   Thus, there is no

reasonable basis to believe that if counsel had a filed a suppression motion, that

motion would have been granted, and so Pate was not prejudiced by counsel's

failure to file a motion to suppress.   Accordingly, he is not entitled to habeas relief

on this claim of ineffective assistance of counsel.

### 3.   Pate's Trial Counsel Was Not Ineffective by Failing to Impeach the Testimony of Brandon Parker.

Pate claims that his trial counsel was ineffective because he failed to impeach

the testimony of Brandon Parker, the driver of the vehicle.

The PRCA Court rejected this claim because Pate's counsel questioned

Parker about his motives for testifying against Pate:

> The record clearly shows that [Pate's] trial counsel
> cross-examined Mr. Parker on his motive to provide favorable

---

[6] "[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011).

testimony for the Commonwealth.   Attorney Duda questioned
Mr. Parker on his lessened sentence upon agreement with the
District Attorney's Office.   Attorney Duda elicited from Mr.
Parker that he would provide favorable testimony for the
Commonwealth and against [Pate] in exchange for a lesser
sentence.   Furthermore, Attorney Duda elicited from Mr. Parker
that as part of the agreement with the District Attorney's Office,
if Mr. Parker provided favorable testimony for the
Commonwealth, he would avoid forfeiture of his car to the
government.   Upon review of [Pate's] pro se PCRA petition,
this Court finds that [Pate] fails to point to any specific area in
which his trial counsel should have impeached the witness.
Therefore, we find that [Pate's] assertion that his trial counsel
rendered ineffective assistance of counsel when he failed to
impeach Mr. Parker's testimony is without merit.

*Commonwealth v. Pate,* 2793 CR 2008, slip op. at 6 (C.C.P. Dauphin Cty. Aug 1,

2012).   Adopting the PCRA Court's analysis, the Superior Court concluded that

Pate failed to establish how any further impeachment of Mr. Parker would have

made a difference. *Commonwealth v. Pate,* No. 1623 MDA 2012, slip op. at 10

(Pa.Super. Ct. June 11, 2013).

Given the cross examination of the Parker by Pate's trial counsel, the Superior

Court's determination that Pate failed to show that his counsel provided ineffective

assistance of counsel is reasonable and amply supported by the record.

Accordingly, Pate is not entitled to habeas relief on this claim of ineffective

assistance of counsel.

28

In connection with his final claim, in his memorandum in support of his petition, Pate argues that his trial counsel was ineffective because he did not request a corrupt-source jury instruction as to Parker's testimony.   Although this claim was not set forth in Pate's habeas petition, he did exhaust the claim in state court.   The respondent addressed the claim on the merits, and so will we.[7]

Pennsylvania's corrupt-source jury instruction provides the jury with "special precautionary rules" to judge the credibility of the testimony of an accomplice. *Pennsylvania Suggested Standard Criminal Jury Instructions* § 4.01.   The instruction defines an accomplice:

> A person is an accomplice of another person in the commission of a crime if he or she has the intent of promoting or facilitating the commission of the crime and (1) solicits the other person to commit it, or (2) aids or agrees or attempts to aid such other person in planning or committing the crime.   Put, simply, an accomplice is a person who knowingly and voluntarily cooperates with or aids another person in committing an offense.

---

[7] Pate also sets forth in his memorandum of law a claim that his trial counsel was ineffective because he failed to file a motion based on *Kastigar v. United States*, 406 U.S. 441 (1972)(holding that "immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege").   In addition to failing to include this claim in his habeas petition, Pate did not exhaust this claim in state court.   Thus, that claim is procedurally defaulted, and we will not address it.

*Id.*   And it instructs the jury to view an accomplice's testimony "with disfavor because it comes from a corrupt and polluted source"; to examine an accomplice's testimony "closely and accept it only with care and caution"; and to consider whether an accomplice's testimony is supported by other evidence. *Id.*

Noting that a corrupt-source instruction is warranted only in cases in which there is sufficient evidence for the jury to conclude that the witness is an accomplice, the Superior Court concluded that there was no evidence that Parker was Pate's accomplice. *Commonwealth v. Pate,* No. 1623 MDA 2012, slip op. at 12 (Pa.Super. Ct. June 11, 2013).   It reasoned that Pate did not implicate Parker during his testimony and that the "[t]rial evidence revealed only that Mr. Parker agreed to give [Pate] a ride." *Id.*   The Court concluded that since Parker was not Pate's accomplice, Pate's counsel was not ineffective for failing to request a corrupt-source instruction. *Id.*

According to Pate, his counsel was ineffective for failing to request a corrupt-source instruction as to Parker.   Given that Parker was the driver of the vehicle in which the contraband that formed the basis of the charges against Pate was found, under certain circumstances it may be reasonable to believe that Pate was involved in the crimes.   But under the "doubly deferential" standard that applies to

a *Strickland* claim evaluated under 28 U.S.C. § 2254(d)(1), *Knowles*, 556 U.S. at 123, and the lack of evidence at trial as to Parker's actual involvement, the Superior Court's determination that there was not sufficient evidence that Parker was an accomplice to warrant a corrupt-source instruction was not unreasonable. Accordingly, Pate is not entitled to habeas relief on this claim of ineffective assistance of counsel.

## IV.   Recommendation.

Accordingly, for the foregoing reasons, we recommend that the petition for a writ of habeas corpus be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.   The judge, however, need conduct a new hearing only in his or her

discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.   The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of April, 2015.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge